1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Richard A. Clark
State Bar No. 39558
(rclark@pmcos.com)
Steven R. Platt
State Bar No. 245510
(splatt@pmcos.com)
PARKER, MILLIKEN, CLARK, O'HARA
& SAMUELIAN. P.C.
555 S. Flower Street, 30th Floor
Los Angeles, CA 90071
Telephone: (213) 683-6500
Facsimile:  (213) 683-6669

Joe G. Hollingsworth (admitted *pro hac vice*)
(jhollingsworth@hollingsworthllp.com)
Katharine R. Latimer (admitted *pro hac vice*)
 (klatimer@hollingsworthllp.com)
Eric G. Lasker (admitted *pro hac vice*)
(elasker@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I Street, N.W.
Washington, DC  20005
Telephone:  (202) 898-5800
Facsimile:  (202) 682-1639

Attorneys for Defendant
MONSANTO COMPANY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENRIQUE RUBIO and YOLANDA MENDOZA, <br><br>         Plaintiffs, <br><br>    v. <br><br> MONSANTO COMPANY, <br><br>         Defendant. | **C.V. NO.: 2:15-cv-07426-DMG-E** <br><br> **MONSANTO COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT [NOTICE OF MOTION FILED CONCURRENTLY]** <br><br> Hearing Date: January 8, 2016 <br> Time: 9:30 a.m. <br> Judge: Dolly Gee <br> Courtroom: 7 |

# <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ................................................................................. 1

II.     FACTUAL BACKGROUND ............................................................... 1

III.    ARGUMENT ....................................................................................... 4

     A.      Plaintiffs' Failure To Warn Claims Are Preempted Under FIFRA...... 4

     B.      Plaintiff Rubio's Claims Are Time-Barred By The Texas Statute of Repose. .............................................................................................. 8

          1.      California's Borrowing Statute Applies to Plaintiff's Claims. ................................................................................... 9

          2.      Texas's Statute of Repose Bars Plaintiff's Claims.................... 9

          3.      Even Without Application of the Borrowing Statute, Texas's Statute of Repose Bars Plaintiff's Claims.................. 10

     C.      Plaintiff Rubio's Non-Warnings Claims Are Also Barred Under Texas Substantive Law. ...................................................... 12

          1.      Under California's Choice of Law Analysis, Texas Law Applies to Plaintiff Rubio's Claims. ....................................... 12

               a.      Texas ............................................................. 12

               b.      Missouri and Delaware ....................................... 13

               c.      Colorado ......................................................... 13

               d.      California and Oregon......................................... 13

          2.      Plaintiff Rubio Fails to Adequately Plead Design Defect........ 14

          3.      Plaintiff Rubio's Implied Warranty Claim is Barred by the Statute of Limitations and Plaintiff's Failure to Plead Pre-Suit Notice Under Texas Law............................................. 15

     D.      Plaintiff Mendoza's Non-Warnings Design Defect Claims Are Barred By Restatement (Second) Of Torts § 402A. ........................... 16

IV.     CONCLUSION ................................................................................. 21

- i -

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackerman v. Am. Cyanamid Co.*,
    586 N.W.2d 208 (Iowa 1998)...............................................................17

*Anderson v. Owens-Corning Fiberglas Corp.*,
    810 P.2d 549 (Cal. 1991).....................................................................18

*Arias v. DynCorp*,
    928 F. Supp. 2d 10 (D.D.C. 2013) .........................................................3

*Artiglio v. Superior Court*,
    27 Cal. Rptr. 2d 589 (Cal. Ct. App. 1994) ...........................................18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...........................................................................15

*Authement v. Ingram Barge Co.*,
    977 F. Supp. 2d 606 (E.D. La. 2013) ...................................................19

*Bates v. Dow Agrosciencies LLC*,
    544 U.S. 431 (2005) ....................................................................*passim*

*Borel v. Fibreboard Paper Prods. Corp.*,
    493 F.2d 1076 (5th Cir. 1973)..............................................................19

*Brown v. Superior Court (Abbott Labs.)*,
    227 Cal. Rptr. 768 (Cal. Ct. App. 1986), *review granted and
    opinion superseded*, 723 P.2d 1248 (Cal. 1986), *aff'd sub nom.
    Brown v. Superior Court*, 751 P.2d 470 (Cal. 1988)................16, 18, 20, 21

*Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co.*,
    419 F.3d 355 (5th Cir. 2005).................................................................11

*Buttram v. Owens-Corning Fiberglas Corp.*,
    941 P.2d 71 (Cal. 1997).........................................................................9

*Canifax v. Hercules Powder Co.*,
    46 Cal. Rptr. 552 (Cal. Ct. App. 1965) ...............................................16

*Carlin v. Superior Court*,
    920 P.2d 1347 (Cal. 1996)....................................................................16

MONSANTO'S MEMO ISO MOTION TO DISMISS

*Carter v. Novartis Consumer Health, Inc.*,
　　582 F. Supp. 2d 1271 (C.D. Cal. 2008) ............................................................. 8

*Caterpillar, Inc. v. Shears*,
　　911 S.W.2d 379 (Tex. 1995) ............................................................................ 15

*Chang v. Baxter Healthcare Corp.*,
　　599 F.3d 728 (7th Cir. 2010) ............................................................................. 9

*Cossman v. DaimlerChrysler Corp.*,
　　133 Cal. Rptr. 2d 376 (Cal. Ct. App. 2003), *as modified* (Apr. 30,
　　2003) ............................................................................................................... 8, 9

*Daniels v. Combustion Eng'g, Inc.*,
　　583 S.W.2d 768 (Tenn. Ct. App. 1978) ........................................................... 19

*Gauthier v. AMF, Inc.*,
　　788 F.2d 634 (9th Cir. 1986), *opinion amended on denial of reh'g*,
　　805 F.2d 337 (9th Cir. 1986) ........................................................................... 18

*Geist v. Sequoia Ventures, Inc.*,
　　99 Cal. Rptr. 2d 476 (Cal. Ct. App. 2000) ........................................................ 9

*Glover v. BIC Corp.*,
　　6 F.3d 1318 (9th Cir. 1993) ............................................................................. 18

*Hall v. Ashland Oil Co.*,
　　625 F. Supp. 1515 (D. Conn. 1986) ................................................................. 19

*Hernandez v. Tokai Corp.*,
　　2 S.W.3d 251 (Tex. 1999) ................................................................................ 14

*Hagans v. Oliver Mach. Co.*,
　　576 F.2d 97 (5th Cir. 1978) ............................................................................. 15

*Hufft v. Horowitz*,
　　5 Cal. Rptr. 2d 377 (Cal. Ct. App. 1992), *as modified* (Mar. 17,
　　1992) ................................................................................................................. 18

*Johnson v. Am. Standard, Inc.*,
　　179 P.3d 905 (Cal. 2008) .................................................................................. 17

*Martinez v. Ford Motor Co.*,
　　No. SA:14-CV-376-DAE, 2014 WL 6680521 (W.D. Tex. Nov. 25,
　　2014) ................................................................................................................. 11

MONSANTO'S MEMO ISO MOTION TO DISMISS

*Mazza v. Am. Honda Motor Co., Inc.*,
    666 F.3d 581 (9th Cir. 2012) ............................................................................ 13

*McCann v. Foster Wheeler LLC*,
    225 P.3d 516 (Cal. 2010)...........................................................................*passim*

*McKay v. Novartis Pharm. Corp.*,
    934 F. Supp. 2d 898 (W.D. Tex. 2013), *aff'd*, 751 F.3d 694 (5th
    Cir. 2014) ................................................................................................................ 15

*Meaunrit v. The Pinnacle Foods Group, LLC.*,
    No. C 09-04555, 2010 WL 1838715 (N.D. Cal. May 5, 2010) ........................... 5

*Mutual Pharm. Co. v. Barlett*,
    133 S. Ct. 2466 (2013) ......................................................................................... 7

*Oakes v. E.I. Du Pont de Nemours & Co.*,
    77 Cal. Rptr. 709 (Cal. Ct. App. 1969) .............................................................. 17

*Oregon Azaleas, Inc. v. W. Farm Servs., Inc.*,
    No. Civ. 00-1348, 2001 WL 34045733 (D. Or. Aug. 20, 2001),
    *aff'd in part, rev'd in non-relevant part*, 65 F. App'x 101 (9th Cir.
    2003) ...................................................................................................................... 17

*Payne v. Soft Sheen Prods., Inc.*,
    486 A.2d 712 (D.C. 1985) .................................................................................... 19

*Plenger v. Alza Corp.*,
    13 Cal. Rptr. 2d 811 (Cal. Ct. App. 1992) ......................................................... 18

*Purvis v. PPG Indus., Inc.*,
    502 So. 2d 714 (Ala. 1987) .................................................................................. 19

*Red v. The Kroger Co.*,
    No. CV 10-01025, 2010 WL 4262037 (C.D. Cal. Sept. 2, 2010)......................... 6

*Reich v. Purcell*,
    432 P.2d 727 (Cal. 1967)..................................................................................... 13

*Riegel v. Medtronic, Inc.*,
    552 U.S. 312 (2008) .............................................................................................. 6

*Rodriguez v. Gilead Scis., Inc.*,
    No. 2:14-CV-324, 2015 WL 236621 (S.D. Tex. Jan. 16, 2015) ........................ 14

- iv -

*RSI Corp. v. Int'l Bus. Machs. Corp.*,
   No. 5:08-cv-3414 RMW, 2012 WL 3277136 (N.D. Cal. Aug. 9,
   2012) ................................................................................................ 13

*Ruiz-Guzman v. Amvac Chem. Corp.*
   7 P.3d 795 (Wash. 2000), *opinion after certified question answered*
   243 F.3d 549 (9th Cir. 2000) ............................................................ 19

*Salgado v. Great Dane Trailers*,
   No. CIV.A. V-10-82, 2012 WL 401484 (S.D. Tex. Feb. 6, 2012) ..................... 10

*Short v. Ford Motor Co.*,
   21 F.3d 1107, 1994 WL 171416 (5th Cir. Apr. 19, 1994) ............................... 14

*Skaggs v. Clairol Inc.*,
   85 Cal. Rptr. 584 (Cal. Ct. App. 1970), *appeal dismissed* ............................ 16, 18

*Smith v. Hartz Mountain Corp.*,
   No. 3:12-cv-00662, 2012 WL 5451726 (N.D. Ohio. Nov. 7, 2012) ..................... 5

*Stangvik v. Shiley Inc.*,
   819 P.2d 14 (Cal. 1991) .................................................................. 12

*Theranos, Inc. v. Fuisz Pharma LLC*,
   876 F. Supp. 2d 1123 (N.D. Cal. 2012) ............................................... 10

*Uptain v. Huntington Lab, Inc.*,
   685 P.2d 218 (Colo. App. 1984), *aff'd,* 723 P.2d 1322 (Colo. 1986) ............... 19

*Vestal v. Shiley Inc.*,
   No. SACV96-1205-GLT(EEX), 1997 WL 910373 (C.D. Cal. Nov.
   17, 1997) ...................................................................................... 12

*Wilgus v. Hartz Mountain Corp.*,
   No. 3:12-CV-86, 2013 WL 653707 (N.D. Ind. Feb. 19, 2013) ....................... 5

*Zaragosa v. Chemetron Invs., Inc.*,
   122 S.W.3d 341, 346 (Tex. App. 2003) ............................................... 11

**STATUTES**

Cal. Civ. Proc. Code § 361 ................................................................... 9

Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 136 *et
   seq.* .........................................................................................*passim*

Tex. Bus. & Com. Code Ann. § 2.607(c)(1) ...........................................................15

Tex. Bus. & Com. Code Ann. § 2.725(b).................................................................15

Tex. Civ. Prac. & Rem. Code Ann. § 16.012 ...........................................................9

**OTHER AUTHORITIES**

40 C.F.R. §156.10(i)(1)(i) ........................................................................................5

40 C.F.R. §156.60.....................................................................................................5

67 Fed. Reg. 60,934 (Sept. 27, 2002) (to be codified at 40 C.F.R. pt.
180) .....................................................................................................................7

69 Fed. Reg. 65,081 (Nov. 10, 2004) (to be codified at 40 C.F.R. pt.
180) .....................................................................................................................7

73 Fed. Reg. 73,586 (Dec. 3, 2008) (to be codified at 40 C.F.R. pt.
180)......................................................................................................................7

78 Fed. Reg. 25,396 (May 1, 2013) (to be codified at 40 C.F.R. pt.
180)......................................................................................................................7

*Agriculture Biotechnology: A Look at Federal Regulation and
Stakeholder Perspectives: Hearing Before the S. Comm. on Agr.,
Nutrition, & Forestry*, 114th Cong. (2015),
http://www.ag.senate.gov/templates/watch.cfm?id=74793e67-5056-
a055-64af-0e55900753b4 .......................................................................3, 8, 20

Curran W.S. & Lingenfelter D.D., *Adjuvants for Enhancing Herbicide
Performance*,
http://extension.psu.edu/pests/weeds/control/adjuvants-for-
enhancing-herbicide-performance ......................................................................2

Duke S.O. & Powles S.B., Glyphosate: A Once-In-A-Century
Herbicide, *Pest. Manag. Sci.* 2008; 64(4):319-25 ....................................2, 15, 19

Dwight D. Lingenfelter, *Introduction to Weeds: What are Weeds and
Why Do We Care?*, http://extension.psu.edu/pests/ipm/schools-
childcare/schools/educators/curriculum/weeds/introweeds .................................2

EPA, *About Pesticide Registration*, http://www2.epa.gov/pesticide-
registration/about-pesticide-registration.............................................................5

MONSANTO'S MEMO ISO MOTION TO DISMISS

EPA, *Glyphosate: Reregistration Eligibility Decision (RED) Fact Sheet* (September 1993), http://archive.epa.gov/pesticides/reregistration/web/pdf/0178fact. pdf ................................................................................................................ 7

IARC, *IARC Monographs on the Evaluation of Carcinogenic Risk to Humans Preamble* (Jan. 2006), http://monographs.iarc.fr/ENG/Preamble/currenta2objective0706. php ................................................................................................................ 4

Letter from EPA Assistant Administrator Stephen L. Johnson to Secretary of State Colin Powell, dated Aug. 19, 2002, http://www.state.gov/j/inl/rls/rpt/aeicc/13237.htm ................................. 3

Lucht J.M., Public Acceptance of Plant Biotechnology and GM Crops, *Viruses* 2015; 7(8):4254 ................................................................. 20, 21

Oerke E.C., Crop Losses to Pests, *J. Ag. Sci.* 2006; 144:31-43 ........................... 2

Owen D.G., *The Puzzle of Comment J*, 55 Hastings L.J. 1377 (2004) ................... 16

Qaim M. & Traxler G., Roundup Ready Soybeans in Argentina: Farm Level and Aggregate Welfare Effects, *Ag. Econ.* 2005; 32(1):73-86 ................ 20

Restatement (Second) of Torts § 402A  ................................... 1, 16, 17, 18

Solomon K., et al., Coca and Poppy Eradication in Colombia, *Rev Environ Contam Toxicol.* 2007; 190:43-125 ..................................................... 3

Solomon K., et al., Human Health and Environmental Risks from the Use of Glyphosate Formulations to Control the Production of Coca in Colombia: Overview and Conclusions, *J Toxicol Environ Health A.* 2009; 72(15-16):914-20 ............................................................................. 2

Williams G.M., et al., Safety Evaluation and Risk Assessment of the Herbicide Roundup and Its Active Ingredient, Glyphosate, for Humans, *Regulatory Toxicol Pharmacol.* 2000; 31:117-65 ............................... 3

MONSANTO'S MEMO ISO MOTION TO DISMISS

## I.    INTRODUCTION

Plaintiff Enrique Rubio alleges that agricultural exposure to Monsanto Company's ("Monsanto") Roundup® caused him to develop multiple myeloma two decades ago.  Plaintiff Yolanda Mendoza alleges that residential exposure to Roundup® caused her to develop non-hodgkin's lymphoma ("NHL") in 2013.  Roundup®'s active ingredient, glyphosate, is the most widely-used weed killer in the United States.  Since its introduction in 1974, the U.S. Environmental Protection Agency ("EPA") repeatedly has concluded, including as recently as last month, that exposure to Roundup® does not cause cancer.  *See infra* at 3.

Plaintiffs' complaint should be dismissed in its entirety because:

- The Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 *et seq*., preempts plaintiffs' warnings-based claims.
- Texas law bars Mr. Rubio's claims because they are all untimely under the Texas statute of repose.  His design defect claim fails because he has not pled a safer alternative design of Roundup®.  Finally, his breach of warranty claim is barred by the statute of limitations and his failure to provide pre-suit notice.
- California law bars Ms. Mendoza's non-warnings based claims because the Restatement (Second) of Torts § 402A limits product liability for alleged inherently dangerous products to alleged inadequate warnings, pursuant to comments j and k.

## II.    FACTUAL BACKGROUND

The ability to feed the world's growing population while the amount of available farmland continues to dwindle is key to preventing a global humanitarian, agricultural, and economic crisis.  Weeds reduce essential crop yield by displacing and contaminating crops, or rendering crops inedible.  Critically, the use of

herbicides can prevent over 70% of potential crop yield losses due to weeds.[1]

Glyphosate is "the most important herbicide" developed in the post-World War II era.[2]  Glyphosate-based herbicides first became commercially available in 1974 when, after four years of testing by its research scientists, Monsanto introduced Roundup®, a mixture of glyphosate and surfactants (chemical compounds commonly found in products such as soaps that allow glyphosate to travel on the surface of the weed to growing areas).[3]  Farmers apply Roundup® before crops are planted or, where glyphosate resistant seed is used, during the growing process.

Glyphosate works by inhibiting a growth-stimulating enzyme that is specific to plants.  Glyphosate is non-selective, meaning that it is intended to and will eradicate any exposed plant.  However, as documented in numerous scientific analyses, glyphosate is not toxic to human or animals.[4]  EPA, which has broad

_____

[1] Oerke E.C., Crop Losses to Pests, *J. Ag. Sci.* 2006; 144:31-43 at 38.  In economic terms, the average estimated annual monetary loss – including losses in field crops, damage to farming equipment, and increased crop production costs – caused by weeds would exceed $15 billion in the United States alone in the absence of herbicides.  *See* Dwight D. Lingenfelter, *Introduction to Weeds: What are Weeds and Why Do We Care?*, http://extension.psu.edu/pests/ipm/schools-childcare/schools/educators/curriculum/weeds/introweeds ("In 1991, the estimated average annual monetary loss caused by weeds with current control strategies in the 46 crops grown in the United States was $4.1 billion. If herbicides were not used, this loss was estimated to be $19.6 billion. Losses in field crops accounted for 82% of this total (Bridges; WSSA, 1992).")

[2] Duke S.O. & Powles S.B., Glyphosate: A Once-In-A-Century Herbicide, *Pest. Manag. Sci.* 2008; 64(4):319-25 at 319.

[3] *See* Curran W.S. & Lingenfelter D.D., *Adjuvants for Enhancing Herbicide Performance*, http://extension.psu.edu/pests/weeds/control/adjuvants-for-enhancing-herbicide-performance.

[4] *See* Solomon K., et al., Human Health and Environmental Risks from the Use of Glyphosate Formulations to Control the Production of Coca in Colombia: Overview

- 2 -

authority to regulate all herbicides under FIFRA, has for decades found glyphosate to be "one of the most safely-used pesticides in the U.S."[5] and repeatedly has concluded that glyphosate exposure does not cause cancer. As recently as October 21, 2015, Dr. William Jordan, Deputy Director of EPA's Office of Pesticide Programs, testified before a Senate Committee that EPA's current safety evaluation of glyphosate, announced in April 2015, confirms that scientific literature "does not provide evidence to show that [g]lyphosate causes cancer and does not warrant any change in EPA's cancer classification for [g]lyphosate." *See Agriculture Biotechnology: A Look at Federal Regulation and Stakeholder Perspectives: Hearing Before the S. Comm. on Agr., Nutrition, & Forestry*, 114th Cong. (2015) (statement of Dr. William Jordan, Deputy Director of EPA's Office of Pesticide Programs), http://www.ag.senate.gov/templates/watch.cfm?id=74793e67-5056-a055-64af-0e55900753b4, at time stamp 55:05 – 56:20 (2015) ("EPA 2015 Desk Statement"). The one federal court to consider allegations regarding the carcinogenicity of glyphosate in a personal injury suit rejected those allegations as lacking reliable scientific support. *See Arias v. DynCorp*, 928 F. Supp. 2d 10, 24-25 (D.D.C. 2013) (excluding as unreliable expert's causation opinion that glyphosate-based herbicides have carcinogenic effects).[6]

---

and Conclusions, *J Toxicol Environ Health A*. 2009; 72(15-16):914-20 at 919; Solomon K., et al., Coca and Poppy Eradication in Colombia, *Rev Environ Contam Toxicol*. 2007; 190:43-125 at 106; Williams G.M., et al., Safety Evaluation and Risk Assessment of the Herbicide Roundup and Its Active Ingredient, Glyphosate, for Humans, *Regulatory Toxicol. Pharmacol*. 2000;31:117-65 (reviewing over 188 documents either in published scientific literature or submitted to regulatory agencies assessing the safety of glyphosate, and concluding that glyphosate "is considered to be practically nontoxic by all these routes of exposure").

[5] Letter from EPA Assistant Administrator Stephen L. Johnson to Secretary of State Colin Powell, dated Aug. 19, 2002, http://www.state.gov/j/inl/rls/rpt/aeicc/13237.htm.

[6] Plaintiff ignores this record of safety and instead relies on the International

MONSANTO'S MEMO ISO MOTION TO DISMISS

1    Mr. Rubio alleges injuries stemming from exposure to Roundup® from 1986
2  through 1995 while he worked for various agricultural companies in three different
3  states: Oregon (1986-1988), California (1988-1993), and Texas (1993-1995).  *See*
4  Am. Compl. ¶ 13.  In 1995, while residing in Texas and either during or subsequent
5  to his final exposures to Roundup®, plaintiff was diagnosed with multiple myeloma
6  and received medical treatment and care.  *Id.* ¶ 70.  He moved from Texas to
7  Colorado in 1997.  *Id.*
8    Ms. Mendoza alleges injuries as a result of spraying Roundup® at her home
9  in Atwater, California between 2004 through late 2012 or early 2013, and thereafter
10  being in close proximity to landscapers who continued to spray Roundup® through
11  2015.  *Id.* ¶¶ 14, 71.  In October 2013, plaintiff was diagnosed with NHL.  *Id.* ¶ 73.

12  **III.   ARGUMENT**

13      **A.    Plaintiffs' Failure To Warn Claims Are Preempted Under**
14          **FIFRA.**

15    Plaintiffs' claims for failure to warn, whether brought under strict liability,
16  negligence, or breach of implied or express warranty theories, are preempted by
17  FIFRA – the pervasive federal regulatory scheme implemented by EPA – and by
18  EPA's repeated determination that glyphosate does not cause cancer.  *See Bates v.*
19  *Dow Agrosciencies LLC*, 544 U.S. 431, 453 (2005) ("[A] failure-to-warn claim
20  alleging that a . . . pesticide's label should have stated 'DANGER' instead of . . .
21  'CAUTION' would be pre-empted because it is inconsistent with [EPA

---

24  Agency for Research on Cancer's ("IARC") recent "cancer hazard" listing of
25  glyphosate as a "probable carcinogen."  IARC is not a regulatory agency, and none
26  of its determinations are binding on any country.  IARC does not take into account
   levels of exposure, methods of exposure, or other factors central to a determination
27  of whether a substance is a carcinogen.  *See* IARC, *IARC Monographs on the*
   *Evaluation of Carcinogenic Risk to Humans Preamble*, at 2 (Jan. 2006),
28  http://monographs.iarc.fr/ENG/Preamble/currenta2objective0706.php.

MONSANTO'S MEMO ISO MOTION TO DISMISS

1   regulations], which specifically assigns these warnings to particular classes of

2   pesticides based on their toxicity.")[7]

3          Under FIFRA, a manufacturer seeking to register a herbicide must submit a

4   proposed label to EPA as well as certain supporting data.  *Bates*, 544 U.S. at 438

5   (citing 7 U.S.C. §§ 136a(c)(1)(C), (F)).  Registration of a herbicide constitutes

6   "prima facie evidence that the [herbicide], its labeling, and packaging comply with

7   [FIFRA's] registration provisions."  7 U.S.C. § 136a(f)(2).  "In evaluating a

8   [herbicide] registration application, [EPA] assess[es] a wide variety of potential

9   human health and environmental effects associated with use of the product . . . .

10  [Including] [p]otential human risk[] … [of] cancer."[8]  EPA "evaluate[s] and

11  approve[s] the language that appears on each [herbicide] label to ensure the

12  directions for use and safety measures are appropriate to any potential risk."  *Id.*;

13  *see also* 40 C.F.R. §156.10(i)(1)(i); 40 C.F.R. §156.60.

14         Notably, unlike with claims of efficacy such as those that were at issue in

15  *Bates*, EPA may not waive an Applicant's data requirements pertaining to the

16  human safety of a herbicide.[9]  As *Bates* explains, EPA's decision to stop evaluating

─────────────────────

17

18

19  [7] *See also Wilgus v. Hartz Mountain Corp.*, No. 3:12-CV-86, 2013 WL 653707, at

20  *6-7 (N.D. Ind. Feb. 19, 2013) (citing *Bates* and holding that where plaintiffs'
    complaint directly challenged the labeling of the product and alleged that the

21  defendants failed to adequately warn of potential dangers associated with it,
    plaintiffs' claims were preempted by FIFRA); *Smith v. Hartz Mountain Corp.*, No.

22  3:12-cv-00662, 2012 WL 5451726, *2-3 (N.D. Ohio. Nov. 7, 2012) (same).

23  [8]  *See* EPA, *About Pesticide Registration*, http://www2.epa.gov/pesticide-

24  registration/about-pesticide-registration.

25  [9] *See* 7 U.S.C. § 136a(c)(5) ("the Administrator may waive data requirements

26  pertaining to efficacy"); *cf. Bates*, 544 U.S. at 440 (basing decision not to preempt
    claims based upon alleged inefficacy of herbicide on fact that EPA "had stopped

27  evaluating pesticide efficacy for routine label approvals almost two decades ago");
    *see also Meaunrit v. The Pinnacle Foods Grp., LLC.*, No. C 09-04555, 2010 WL

28  1838715, *10 (N.D. Cal. May 5, 2010) (noting that *Bates* ruling was based on

- 5 -

pesticides for efficacy was specifically based upon its need to devote its resources to assessing potential environmental and health risks. *See Bates*, 544 U.S. at 440. EPA cannot register a herbicide or approve its labeling unless EPA concludes that the herbicide "will perform its intended function without unreasonable adverse effects on the environment," *i.e.,* unreasonable risk to man or the environment. 7 U.S.C. § 136a(c)(5)(C); 7 U.S.C. § 136(bb) (defining "unreasonable adverse effects on the environment").

In order to ensure the exclusivity of EPA's comprehensive regulatory scheme over product labeling, section 136v(b) of FIFRA contains an express preemption clause, which limits the role of states in regulating warnings for pesticides and herbicides. Section 136v(b) provides that states "shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter." The Supreme Court explained that the term "requirements" as used in section 136v(b) reaches beyond positive enactments, such as statutes and regulations, to embrace common-law duties. *Bates*, 544 U.S. at 443; *see also Riegel v. Medtronic, Inc.*, 552 U.S. 312, 324 (2008) (same). Thus, section 136v(b) preempts any statutory or common-law rule that would impose a warning requirement that diverges from EPA's labeling decisions under FIFRA. *See Red v. The Kroger Co.*, No. CV 10-01025, 2010 WL 4262037, at *7 (C.D. Cal. Sept. 2, 2010) (pursuant to *Bates*, "a state law labeling requirement would not be pre-empted by FIFRA *only* 'if it is equivalent to, and fully consistent with' the applicable FIFRA subchapter") (emphasis added).[10]

---

EPA's lack of review of efficacy claims and preempting claims that challenged federal safety determinations under express preemption clauses in federal statutes identical to preemption clause in FIFRA).

[10] The U.S. Supreme Court has twice confirmed this interpretation of section 136v(b). First, in *Riegel*, the Court explained that FIFRA's "provision pre-empting state 'requirements' pre-empted common law duties." 552 U.S. at 324 (citing

- 6 -

Here, plaintiffs allege under various legal theories that because Monsanto failed to warn of the "carcinogenic nature of glyphosate," they suffered injuries. Am. Compl. ¶ 136; *see also id.* ¶¶ 115, 131(g), 142, 156.  Plaintiffs' allegations are directly contradicted not only by EPA's prior express approval of the product and product label but also by EPA's consistent findings that glyphosate is *not* carcinogenic to humans.  Specific findings of safety include:

- "In June 1991, EPA classified glyphosate as a Group E carcinogen—one that shows evidence of non-carcinogenicity for humans—based on the lack of convincing evidence of carcinogenicity in adequate studies."   EPA, *Glyphosate: Reregistration Eligibility Decision (RED) Fact Sheet* (September 1993), http://archive.epa.gov/pesticides/reregistration/web/pdf/0178fact.pdf.

- "No evidence of carcinogenicity."  Glyphosate; Pesticide Tolerances, 67 Fed. Reg. 60,934, 60,943 (Sept. 27, 2002) (to be codified at 40 C.F.R. pt. 180).

- "Glyphosate has no carcinogenic potential." Glyphosate; Pesticide Tolerance, 69 Fed. Reg. 65,081, 65,086 (Nov. 10, 2004) (to be codified at 40 C.F.R. pt. 180).

- "There is [an] extensive database available on glyphosate, which indicate[s] that glyphosate is not mutagenic, not a carcinogen, and not a developmental or reproductive toxicant." Glyphosate; Pesticide Tolerances, 73 Fed. Reg. 73,586, 73,589 (Dec. 3, 2008) (to be codified at 40 C.F.R. pt. 180).

- "EPA has concluded that glyphosate does not pose a cancer risk to humans." 78 Fed. Reg. 25396, 25398 (May 1, 2013) (to be codified at 40 C.F.R. pt. 180).

---

*Bates*).  Then, in *Mutual Pharm. Co. v. Barlett*, the Court reiterated that under *Bates*, a state common-law claim imposes a "pre-emptable requirement." 133 S. Ct. 2466, 2479-80 (2013).

- "In 2014, EPA reviewed over 55 epidemiological studies conducted on the possible cancer and non-cancer effects of [g]lyphosate.  Our review concluded that this body of research does not provide evidence to show that [g]lyphosate causes cancer and does not warrant any change in the EPA's cancer classification for [g]lyphosate."  EPA 2015 Desk Statement.

Plaintiffs' failure to warn claims seek to impose "requirements for labeling or packaging in addition to or different from" these consistent findings of EPA. Accordingly, all of plaintiffs' warnings-based claims are preempted by FIFRA and should be dismissed.[11]

## B.   Plaintiff Rubio's Claims Are Time-Barred By The Texas Statute of Repose.

Mr. Rubio's cause of action arose in Texas.  Therefore, the California borrowing statute applies and bars his claims, because they would have been barred if brought in Texas.  *See Cossman v. DaimlerChrysler Corp.*, 133 Cal. Rptr. 2d 376, 380-82 (Cal. Ct. App. 2003), *as modified* (Apr. 30, 2003).

---

[11] This dismissal should extend to plaintiff Mendoza's claim for breach of express warranty, which is based on Monsanto's alleged "incomplete warnings" about glyphosate's safety risks.  Am. Compl. ¶ 142.  This Court has held that express warranty claims are preempted if, as here, they are based on alleged misleading statements about safety and effectiveness on federally-approved labeling.  *See Carter v. Novartis Consumer Health, Inc.*, 582 F. Supp. 2d 1271, 1283-86 (C.D. Cal. 2008).  "Claims for breach of warranty based upon these kinds of statements would impose liability upon Defendants for complying with [federal] regulations, and constitute perhaps the clearest example of state law requirements that differ from federal requirements."  *Id.* at 1285.  Express warranty claims would not be preempted under FIFRA if they relied on a "contractual commitment that [a manufacturer] voluntarily undertook by placing that warranty on its product," *Bates,* 544 U.S. at 444, but Ms. Mendoza makes no such contractual allegation here.

1.   <u>California's Borrowing Statute Applies to Plaintiff's</u>
     <u>Claims.</u>

California's borrowing statute "borrows" the statute of limitations/repose period of another state when, as here, a non-resident plaintiff's cause of action "arose" in the other state and would be barred as untimely in that state.  *See* Cal. Civ. Proc. Code § 361 (West) (borrowing statute applies when cause of action "has arisen in another State"); *McCann v. Foster Wheeler LLC*, 225 P.3d 516, 525 (Cal. 2010).  A tort "arises" once all elements of the cause of action exist, including damages.[12]  Because plaintiff resided in Texas when he was last exposed to Roundup® and diagnosed with multiple myeloma, *see* Am. Compl. ¶¶ 13, 68-70, his cause of action arose there and Texas's statute of repose applies to his claims.  *See Geist v. Sequoia Ventures, Inc.*, 99 Cal. Rptr. 2d 476, 478 (Cal. Ct. App. 2000) (applying California's borrowing statute to statute of repose without conducting a governmental interests analysis); *Cossman*, 133 Cal. Rptr. 2d at 380-382 (same).

2.   <u>Texas's Statute of Repose Bars Plaintiff's Claims.</u>

Under Texas's statute of repose, product liability actions are barred fifteen years after the sale of the product by a defendant.  "'Products liability action' means any action against a manufacturer . . . for harm allegedly caused by a defective product, whether the action is based in strict liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, . . . and whether the relief sought is recovery of damages or any other legal or equitable relief . . ."  Tex. Civ. Prac. & Rem. Code Ann. § 16.012(a)(2) (West).

---

[12] *See Buttram v. Owens-Corning Fiberglas Corp.*, 941 P.2d 71, 80 (Cal. 1997) ("Until the plaintiff's injury is first diagnosed or discovered by the plaintiff, he has no awareness of his disease or injuries, or of the possibility of a future need to file suit, much less any expectation of recovery."); *see also Chang v. Baxter Healthcare Corp.*, 599 F.3d 728, 734 (7th Cir. 2010) (affirming application of Taiwanese statute of repose to plaintiffs' tort claims pursuant to California's borrowing statute because "there is no tort without an injury " and plaintiffs' injuries occurred in Taiwan).

1    The statute includes an exception for latent injuries, but that exception only

2    applies if the symptoms of that injury do not manifest within the proscribed fifteen-

3    year period.  *Id.* at (d)(3); *see Salgado v. Great Dane Trailers*, No. CIV.A. V-10-

4    82, 2012 WL 401484, at *3 n.4 (S.D. Tex. Feb. 6, 2012).  Here, plaintiff's injury

5    was manifest in 1995, the year he allegedly was diagnosed with cancer, *see* Am.

6    Compl. ¶ 70, and well before the end of the repose period.  Accordingly, the latent

7    injury exception does not apply and all of plaintiff's claims were barred by the

8    statute of repose in 2010.

9           3.    Even Without Application of the Borrowing Statute, Texas's

10                Statute of Repose Bars Plaintiff's Claims.

11   In cases where it is "reasonably debatable" whether plaintiff's cause of action

12   arose in a given state or whether plaintiff was a citizen of California from the time

13   the cause of action "accrued" within the meaning of the borrowing statute, courts

14   will also consider California's generally applicable choice-of-law principles.

15   *McCann*, 225 P.3d at 526.  California's generally applicable governmental interest

16   choice of law analysis favors application of the Texas statute of repose.

17          California takes a three-step approach in answering choice-of-law questions.

18   First, the court must determine whether there is a conflict between the laws of the

19   jurisdictions at issue.  *Theranos, Inc. v. Fuisz Pharma LLC*, 876 F. Supp. 2d 1123,

20   1130 n. 7 (N.D. Cal. 2012).  Second, if so, the court examines whether each

21   jurisdiction's interest is such that the choice of law represents a "true" conflict.  *Id*.

22   Third, if a "true" conflict of interests exists, the court applies the law of the state

23   whose interest would be most impaired if its law were not applied.  *Id.*

24          The substantive laws of Texas and California clearly differ on the issue of

25   when suits may be brought.  Texas has a product liability statute of repose, which

26   serves as an absolute bar to claims brought after fifteen years.  California has no

27   statute of repose.

28          This difference in statute of repose law also creates a "true conflict."  Texas

- 10 -

enacted its statute of repose for "'the legitimate state purpose of protecting manufacturers and sellers from stale claims.'" *Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co.*, 419 F.3d 355, 361 n.19 (5th Cir. 2005) (quoting *Zaragosa v. Chemetron Invs., Inc.*, 122 S.W.3d 341, 346 (Tex. App. 2003)); *see also Martinez v. Ford Motor Co.*, No. SA:14-CV-376-DAE, 2014 WL 6680521, at *6 (W.D. Tex. Nov. 25, 2014) ("Thus, the purpose of a statute of repose is to provide absolute protection to certain parties from the burden of indefinite potential liability.") (internal quotation and citation omitted).  Texas has an additional interest in regulating tort liability for injuries allegedly incurred within the state by its residents.  California's interest here is more limited – deterring unlawful conduct by companies who produce products used by former residents of the state that allegedly cause harm in another state.

The Court thus must look to which state's interests would be most impaired if its statute of repose law was not followed in this case.  This analysis plainly favors application of Texas law here.  Texas enacted its statute of repose to provide a reasonable balance between its state interest in protecting its residents from harm and encouraging business activity within its borders.  As the Supreme Court of California explained in *McCann*:

> When a state adopts a rule of law limiting liability for commercial activity conducted within the state in order to provide what the state perceives is fair treatment to, and an appropriate incentive for, business enterprises . . . . [A]s a practical and realistic matter the state's interest in having that law applied to the activities of out-of-state companies within the jurisdiction is equal to its interest in the application of the law to comparable activities engaged in by local businesses situated within the jurisdiction.

225 P.3d at 530.  While California has reached a contrary policy decision, its interest in this case is relatively minor because plaintiff was not a California

- 11 -

resident at the time his claim arose and does not allege any injury in the state.  Suits by California residents "provide sufficient deterrence" to prevent wrongful conduct by manufacturers, and deterrence would only be "negligibl[y]" advanced if claims by nonresidents proceeded in a California court.  *Stangvik v. Shiley Inc.*, 819 P.2d 14, 23 (Cal. 1991).  Additionally, California has little interest in applying its law to compensate nonresidents for alleged injuries sustained out-of-state.  *Vestal v. Shiley Inc.*, No. SACV96-1205-GLT(EEX), 1997 WL 910373, at *3 (C.D. Cal. Nov. 17, 1997) (internal citation omitted).  Thus, under California choice of law analysis, the Texas statute of repose applies to plaintiff's claims.

**C.**     **Plaintiff Rubio's Non-Warnings Claims Are Also Barred Under Texas Substantive Law.**

1.     Under California's Choice of Law Analysis, Texas Law Applies to Plaintiff Rubio's Claims.

The Complaint identifies six jurisdictions that are potentially relevant to Mr. Rubio's warnings, design defect, and warranty claims: Missouri, Delaware, Oregon, California, Texas, and Colorado.  *See* Am. Compl. ¶ 2 ("Monsanto is . . . based in St. Louis, Missouri."); ¶ 15 ("Defendant Monsanto Company . . . is a Delaware corporation . . ."); ¶ 13 (listing states where and dates when plaintiff allegedly was exposed to Roundup®); ¶ 70 (describing plaintiff's post-diagnosis move to Colorado to live with nephew).  For much the same reasons discussed *supra* at Section II.C., under California's governmental interest test, Texas law should apply to Mr. Rubio's claims.

a.     Texas

The majority of the events that form the basis of plaintiff's claims took place in Texas, including *both* his last alleged exposure to Roundup® and his cancer diagnosis and initial treatment.  And plaintiff's allegations implicate Texas's desire to regulate tortious conduct against its residents and to protect and incentivize business enterprises, as discussed above.  Accordingly, Texas's interest is the

1  strongest and would be the most impaired if its law was not applied in this case.

2  The interests of the other five states are comparatively weak.

3                  b.      <u>Missouri and Delaware</u>

4         Plaintiff's claims have no connection to Missouri and Delaware apart from

5  the fact that Monsanto is domiciled in the first and incorporated in the second.

6  Missouri and Delaware's interests are easily eclipsed by those of other states.  *See*

7  *RSI Corp. v. Int'l Bus. Machs. Corp.*, No. 5:08-cv-3414 RMW, 2012 WL 3277136,

8  at *10 (N.D. Cal. Aug. 9, 2012) (explaining that any interest a state may have in the

9  regulation of its own manufacturers is outweighed by another state's interest in

10  compensating residents injured by defective products).

11                  c.      <u>Colorado</u>

12         While the plaintiff currently resides in Colorado, his alleged exposures

13  and his cancer diagnosis occurred in other states.  Because no injury-

14  producing conduct or diagnosis took place in Colorado, it would be

15  inappropriate to apply Colorado law.  *See McCann*, 225 P.3d at 537 (holding

16  that although California would incur costs for plaintiff's care as his state of

17  residence, California does not "treat[] that type of case as one in which a

18  defendant's conduct has caused an injury in California");  *see also RSI Corp.*,

19  2012 WL 3277136, at *10 (to same effect); *Reich v. Purcell*, 432 P.2d 727,

20  730 (Cal. 1967) (to same effect).

21                  d.      <u>California and Oregon</u>

22         Plaintiff alleges former residence and exposure to Roundup® in

23  California and Oregon, as well as Texas.  However, Texas has additional

24  interests in the case above that of the other two exposure states because

25  plaintiff's last exposure, purported cancer diagnosis and initial treatment, and

26  claimed damages occurred there.  *See supra* Section II.B.  As a result,

27  Texas's interest reigns supreme.  *See Mazza v. Am. Honda Motor Co., Inc.*,

28  666 F.3d 581, 593 (9th Cir. 2012) ("California recognizes that with respect to

- 13 -

1  regulating or affecting conduct within its borders, the place of the wrong has

2  the predominant interest," and "considers the place of the wrong to be the

3  state where the last event necessary to make the actor liable occurred.")

4  (internal citation omitted).

5          2.      Plaintiff Rubio Fails to Adequately Plead Design Defect.

6          Under Texas law, a plaintiff alleging design defect is required to plead the

7  existence of a safer alternative design.  *See Hernandez v. Tokai Corp.*, 2 S.W.3d

8  251, 256 (Tex. 1999) (recognizing that "the availability of a safer alternative

9  design" is a "requisite element of a cause of action for defective design").  A failure

10 to plead or prove a safer design alternative will result in the dismissal of the claim.

11 *See, e.g.*, *Rodriguez v. Gilead Scis., Inc.*, No. 2:14-CV-324, 2015 WL 236621, at *3

12 (S.D. Tex. Jan. 16, 2015) (granting defendant's motion to dismiss "all claims, under

13 any theory, related to design defects" for failure to plead a safer alternative design).

14         Here, Mr. Rubio anticipated Texas's requirement but his *ipse dixit* regarding

15 the existence of a safer alternative design does not suffice.  Mr. Rubio offers bare

16 allegations that a safer alternative design exists, *see* Am. Compl. ¶¶ 91(h), 95, but

17 he fails to plead any facts to support an alternative design for glyphosate or

18 Roundup®.[13]

19         Monsanto does not have the burden to disprove plaintiff's allegations;

20 however, Mr. Rubio cannot and did not plead a feasible alternative to glyphosate

21 because one does not exist.  As detailed above, glyphosate is unique in its high

22 specificity towards an enzyme that is essential to plant growth but that is not

23

24 [13] Plaintiff's bald allegations that Roundup® products are "inherently dangerous" or

25 "unreasonably dangerous," *see, e.g.*, Am. Compl. ¶¶ 86, 88, 91(c), do not salvage

   his design defect claims.  *See Short v. Ford Motor Co.*, 21 F.3d 1107, 1994 WL
26 171416, at *8 (5th Cir. Apr. 19, 1994) (holding that plaintiffs failed to establish a

27 design defect where they "assert[ed] the bald conclusion that the design of the

   [product was] unreasonably dangerous" but provided "nothing in way of specific
28 support for that conclusion beyond their own opinions and beliefs").

present in animals or humans.  *See Glyphosate: A Once-In-A-Century Herbicide* at

319.  No other chemical classes or analogs are capable of targeting the enzyme this

way.  *Id.*  Glyphosate's unique mode of action also is active on a wide range of

plant species.  *Id.*  Any supposed substitute to glyphosate would need to carry this

same extraordinary and broad utility to qualify as a true, viable alternative.  *See*

*Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 384 (Tex. 1995) ("Texas law does not

require a manufacturer to destroy the utility of his product in order to make it

safe.") (quoting *Hagans v. Oliver Mach. Co.*, 576 F. 2d 97, 101 (5th Cir. 1978)).

Plaintiff's conclusory allegations regarding the existence of a feasible

alternative design are "not entitled to the assumption of truth," and his design defect

claims should be dismissed.  *See Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).

3.    Plaintiff Rubio's Implied Warranty Claim is Barred by the
Statute of Limitations and Plaintiff's Failure to Plead Pre-Suit
Notice Under Texas Law.

Plaintiff's breach of warranty claim is independently barred by the Texas

statute of limitations.  Under Tex. Bus. & Com. Code Ann. § 2.725(b), breach of

warranty claims accrue not later than four years after the tender of delivery.  Here,

the relevant tender of delivery occurred at various times between 1986-1995.  *See*

Am. Compl. ¶ 13, 67-70.  Consequently, plaintiff's breach of implied warranty

claim has been time-barred for at least sixteen years.

Plaintiff's warranty claim is also precluded because he failed to provide

Monsanto with pre-suit notice of the alleged breach.  Under Texas law, a plaintiff

must provide pre-suit notice to a seller of a breach of implied warranty before

bringing suit.  Tex. Bus. & Com. Code Ann. § 2.607(c)(1).  Because plaintiff failed

to do so (or even to allege that he had done so), his breach of implied warranty

claim must be dismissed.  *See McKay v. Novartis Pharm. Corp.*, 934 F. Supp. 2d

898, 915 (W.D. Tex. 2013) ("The court notes that pre-suit notice is also a condition

precedent to actions based on a breach of implied warranty.") (dismissing warranty

- 15 -

claim) (internal quotation and citation omitted), *aff'd*, 751 F.3d 694 (5th Cir. 2014).

### D.   Plaintiff Mendoza's Non-Warnings Design Defect Claims Are Barred By Restatement (Second) Of Torts § 402A.

Ms. Mendoza's design defect claims focus on glyphosate's and/or Roundup®'s alleged "carcinogenic properties." *See* Am. Compl. ¶¶ 32, 44, 81, 124(d), 160, 167-168.  Plaintiff does not allege that there is an alternative design that would avoid this claimed carcinogenic effect.  Rather, she alleges that glyphosate and Roundup® are inherently and unavoidably dangerous.  As such, plaintiff's design defect claims are governed by the "closely related" comments j and k to the Restatement (Second) of Torts §402A, and therefore plaintiff is limited to claims that the warnings accompanying the product are deficient.  *See Brown v. Superior Court (Abbott Labs.)*, 227 Cal. Rptr. 768, 772-73 (Cal. Ct. App. 1986), *review granted and opinion superseded*, 723 P.2d 1248 (Cal. 1986), *aff'd sub nom. Brown v. Superior Court*, 751 P.2d 470 (Cal. 1988).[14]  Thus, plaintiff's non-warnings claims should be dismissed.[15]

As adopted in California, comments j and k address the class of products that carry unavoidable dangers that cannot be designed away without destroying their utility.  *See* Owen D.G., The Puzzle of Comment J, 55 *HASTINGS L.J.* 1377, 1383 (2004).  Such products, "accompanied by proper warnings, are not in a 'defective

---

[14] *See also Canifax v. Hercules Powder Co.*, 46 Cal. Rptr. 552, 558 (Cal. Ct. App. 1965) (summarizing comments j and k as stating the rule that "a product, although faultlessly made, may nevertheless be deemed defective . . . if it is unreasonably dangerous to place the product in the hands of a user without a suitable warning and the product is supplied and no warning[s] is given").

[15] Section 402A is stated as an adjunct of strict liability, and California courts have found that comments j and k also reflect "well settled rules already a part of the law of negligence."  *Skaggs v. Clairol Inc.*, 85 Cal. Rptr. 584, 587 (Cal. Ct. App. 1970), *appeal dismissed* (discussing comment j); *see also Carlin v. Superior Court*, 920 P.2d 1347, 1357-58 (Cal. 1996) (explaining that comment k is based on negligence principles).

condition unreasonably dangerous' with respect to the unavoidable dangers inherent in products of this type." *Id.* Comments j and k reflect the policy determination in Section 402A that:

> [B]ecause there is no way (other than providing warnings) that manufacturers of such products can minimize the inherent dangers of such products without also destroying their utility, there is no good reason in corrective justice or economics to force manufacturers to insure consumers against risks of harm they have chosen to accept by using products with inherent risks they fully understand.

*Id.*

California courts have specifically applied comment j in cases involving herbicides. *See Oakes v. E.I. Du Pont de Nemours & Co.*, 77 Cal. Rptr. 709, 712-13 (Cal. Ct. App. 1969) (explaining that manufacturer of "weed-killing products" was required to warn only of "special danger[s]" he has knowledge of or "'by the application of reasonable, developed human skill and foresight'" should have knowledge of).[16]  Pursuant to comment j, "a product bearing … a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous." *Id.* at 712; *see also Johnson v. Am. Standard, Inc.*, 179 P.3d 905, 916 (Cal. 2008) (applying comment j).  Where "there [is] no evidence … that defendant's product was defectively 'manufactured,' in the literal sense of the

---

[16] Other courts have done likewise. *See Ackerman v. Am. Cyanamid Co.*, 586 N.W.2d 208, 220-221 (Iowa 1998) (applying comment j in herbicide case and holding the "[u]nder the applicable products liability law, it is clear that if American Cyanamid had placed directions or warnings on its label that, if followed, would have made the product safe for use, the product would not be unreasonably dangerous and liability would be avoided"); *Oregon Azaleas, Inc. v. W. Farm Servs., Inc.*, No. Civ. 00-1348, 2001 WL 34045733, at *4 (D. Or. Aug. 20, 2001), *aff'd in part, rev'd in non-relevant part*, 65 F. App'x 101 (9th Cir. 2003) (applying comment j in rejecting design defect involving pesticide).

word," defendant can be found liable under comment j to section 402A "only if it *negligently* failed to label its product in such a manner as to warn consumers of the dangerous ingredient contained therein." *Skaggs*, 85 Cal. Rptr. at 588 (emphasis in original).[17]

In *Brown v. Superior Court*, the California Supreme Court applied comment k and held that manufacturers of prescription drugs cannot be held strictly liable for design defect based upon the theory that the drug was defectively designed.  751 P.2d 470, 480 (Cal. 1988).  The court reasoned that "[p]ublic policy favors the development and marketing of beneficial new drugs, even though some risks, perhaps serious ones, might accompany their introduction . . ." *Id.* at 479.  Thus, "the imposition of a harsher test for liability would not further the public interest . . . ." *Id.* at 480.

"*Brown's* logic and common sense are not limited to drugs." *Anderson v. Owens-Corning Fiberglas Corp.*, 810 P.2d 549, 556 (Cal. 1991).  California courts thus have extended comment k protection to other medical products, including inflatable penile prostheses,[18] breast implants,[19] and intrauterine devices.[20]  Courts in other jurisdictions have applied comment k to chemicals and other compounds,

---

[17]  "Other courts have also held that where adequate warnings are given, a product is neither defective nor unreasonably dangerous." *Gauthier v. AMF, Inc.*, 788 F.2d 634, 635-36 (9th Cir. 1986), *opinion amended on denial of reh'g,* 805 F.2d 337 (9th Cir. 1986) (Montana law and citing other cases); *see also Glover v. BIC Corp.*, 6 F.3d 1318, 1323 (9th Cir. 1993) (Oregon law).

[18] *Hufft v. Horowitz*, 5 Cal. Rptr. 2d 377, 378, 383-84 (Cal. Ct. App. 1992), *as modified* (Mar. 17, 1992).

[19] *Artiglio v. Superior Court*, 27 Cal. Rptr. 2d 589, 593-93 (Cal. Ct. App. 1994).

[20] *Plenger v. Alza Corp.*, 13 Cal. Rptr. 2d 811, 818-19 (Cal. Ct. App. 1992).

including asbestos-containing insulation,[21] benzene,[22] cleaning compounds,[23] perchloroethylene,[24] and permanent hair wave products.[25]

*Ruiz-Guzman v. Amvac Chemical Corp.* illustrates the use of comment k in a pesticide case. 7 P.3d 795, 803 n.10 (Wash. 2000), *opinion after certified question answered,* 243 F.3d 549 (9th Cir. 2000). The court reasoned that "a determination that pesticides can *never* be unavoidably unsafe products within the ambit of comment k would seem to defy common sense." *Id.* at 803. Accordingly, "a product-by-product approach to the application of comment *k* [to pesticides] is warranted." *Id.* Even if "its product cannot be made safer for its intended use, a pesticide manufacturer could demonstrate the product serves an important enough function (e.g., in the realm of food production) so as to justify its unavoidable risks." *Id.*; *see also Bates*, 544 U.S. at 450 n.25 ("Given the inherently dangerous nature of pesticides, most safety gains are achieved not through modifying a pesticide's design, but by improving the warnings and instructions contained on its label.")

As detailed above, glyphosate is unique in its high specificity towards an enzyme that is essential to plant growth but that is not present in animals or humans. *See Glyphosate: A Once-In-A-Century Herbicide* at 319. No other chemical classes or analogs are capable of targeting the enzyme this way. *Id.*

---

[21] *Borel v. Fibreboard Paper Prods. Corp.,* 493 F.2d 1076, 1091 (5th Cir. 1973); *Daniels v. Combustion Eng'g, Inc.*, 583 S.W.2d 768, 772 (Tenn. Ct. App. 1978).

[22] *Authement v. Ingram Barge Co.*, 977 F. Supp. 2d 606, 615 (E.D. La. 2013); *Hall v. Ashland Oil Co.*, 625 F. Supp. 1515, 1518 (D. Conn. 1986).

[23] *Uptain v. Huntington Lab, Inc.*, 685 P.2d 218, 220 (Colo. App. 1984), *aff'd,* 723 P.2d 1322 (Colo. 1986).

[24] *Purvis v. PPG Indus., Inc.*, 502 So. 2d 714, 718 (Ala. 1987).

[25] *Payne v. Soft Sheen Prods., Inc.*, 486 A.2d 712, 722 (D.C. 1985).

Glyphosate's unique mode of action also is active on a wide range of plant species. *Id.* The "spectacular" adoption of glyphosate-resistant ("GR") crops is due to the fact that "the [specific] combination of glyphosate and a GR crop . . . provides better, simpler, cheaper and more flexible weed management than the conventional alternatives." *Id.* at 322. Plaintiff acknowledges that "Monsanto's glyphosate products are registered in 130 countries and approved for use on over 100 crops." Am. Compl. ¶ 31.

The aggregate welfare effects of glyphosate and GR crops are also considerable. For example, in 2001 alone, GR soybeans created more than $1.2 billion of economic surplus at the global level, with the largest share, 53%, going to consumers. *See* Qaim M. & Traxler G., Roundup Ready Soybeans in Argentina: Farm Level and Aggregate Welfare Effects, *Ag. Econ.* 2005; 32(1):73-86; *see also* Lucht J.M., Public Acceptance of Plant Biotechnology and GM Crops, *Viruses* 2015; 7(8):4254, at 4255 (By using crops engineered to be resistant to glyphosate and other herbicides, "[f]armer's profits increased by 68% on average . . . . Crop yields rose by 22%, the expense for pesticides declined by 39%.")

Although plaintiff may allege that glyphosate might have been "made safer if it was withheld from the market until scientific skill and knowledge advanced to the point at which additional . . . side effects would be revealed," *Brown,* 751 P.2d at 479, such a delay added to the delay required to obtain approval for release of the product from EPA, "would not serve the public welfare." *Id.* Moreover, if Monsanto or other manufacturers of herbicide products were subject to strict liability, they might be "reluctant to undertake research programs" to develop beneficial new products, and "the additional expense of . . . research programs to reveal possible dangers not detectable by available scientific methods" could place the cost of vital herbicide products "beyond the reach of those who need it most" like poor, rural, and developing populations. *See id*; *see also Agriculture Biotechnology* at time stamp 239:28-240:04 (Statement of Dr. Ronald Kleinman,

- 20 -

Physician in Chief at Massachusetts General Hospital for Children) (2015) ("[Food insecurity] is often driven by economic limitations and often afflicting the most vulnerable children . . . and the elderly . . . . Enhanced, maintainable food production is essential [to addressing this problem] in both the developed and developing world.")

Given "the public['s] interest in the development, availability, and reasonable price" of glyphosate, plaintiff's claims are governed by comments j and k and Monsanto may only be held liable based upon an alleged failure to warn.  *See Brown*, 751 P.2d at 477.  Plaintiff's non-warnings strict liability and negligent design defect claims should therefore be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, this Court should grant this motion and dismiss this case in its entirety.

DATED NOVEMBER 9, 2015                Respectfully submitted,

/s/ Joe G. Hollingsworth

Richard A. Clark                    Joe G. Hollingsworth (admitted pro hac
State Bar No. 39558                 vice)
(rclark@pmcos.com)                  (jhollingsworth@hollingsworthllp.com)
Steven R. Platt                     Katharine R. Latimer (admitted pro hac
State Bar No. 245510                vice)
(splatt@pmcos.com)                  (klatimer@hollingsworthllp.com)
PARKER, MILLIKEN, CLARK,            Eric G. Lasker (admitted pro hac vice)
O'HARA                              (elasker@hollingsworthllp.com)
& SAMUELIAN. P.C.                   HOLLINGSWORTH LLP
555 S. Flower Street, 30th Floor    1350 I Street, N.W.
Los Angeles, CA 90071               Washington, DC  20005
Telephone: (213) 683-6500           Telephone:  (202) 898-5800
Facsimile:  (213) 683-6669          Facsimile:  (202) 682-1639

Attorneys for Defendant MONSANTO
COMPANY